IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MORRIS COOPER, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 15-575 (JBS/JS) |
| ATLANTIC COUNTY JUSTICE FACILITY et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Morris Cooper, Plaintiff Pro Se
#228533
Atlantic County Justice Facility
5060 Atlantic Avenue
Mays Landing, NJ 08330

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

Before the Court is Plaintiff Morris Cooper's

("Plaintiff"), submission of a civil rights complaint pursuant

to 42 U.S.C. § 1983.[1] Plaintiff is a pretrial detainee currently

confined at Atlantic County Justice Facility ("ACJF"), Mays

---

[1] Plaintiff claims that jurisdiction is proper under 28 U.S.C. § 1333 (granting the district courts original jurisdiction of admiralty or maritime civil cases). The Court finds that jurisdiction is proper under § 1983.  Plaintiff's complaint also contains a "Petition for Removal" pursuant to 28 U.S.C. § 1455 (Docket Entry 1 at 14). Plaintiff has failed to meet the requirements of 28 U.S.C. § 1455(a), therefore removal shall not be permitted, and Plaintiff's criminal action shall remain in the state courts.

Landing, New Jersey.  By Order dated March 17, 2015, this Court granted Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and ordered the Clerk to file the Complaint. (Docket Entry 2). At this time, the Court must review the complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the complaint will be permitted to go forward in part, and will be dismissed in part.[2]

## I. BACKGROUND

Plaintiff brings this civil rights action against Defendants ACJF, Freeholders of Atlantic County, Medical Staff of Atlantic County Justice Facility, Atlantic County Correctional Officers, CFG Health Systems, LLC, ("CFG") and Warden Geraldine Cohen.  The following factual allegations are taken from the complaint and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of Plaintiff's allegations.

---

[2] Plaintiff also filed a Motion to Amend his complaint. (Docket Entry 3). That motion shall be granted in part as set forth herein.

Plaintiff alleges that he was beaten and sexually assaulted by Officer Buonsante, Sgt. Gill, Sgt. Montoya, D.t. Geiger J., Ofc. Grey, and other John Doe ACJF officers.  According to the complaint, Plaintiff was escorted to the medical area of ACJF. While he was waiting, he began talking with some of the women in the area. (Docket Entry 1 at 5). Officer Buonsante yelled at Plaintiff to stop talking to them, and Plaintiff responded that Officer Buonsante did not have to yell at him like a child. (Docket Entry 1 at 5).  Officer Buonsante then left his post and told Plaintiff he was "goin back." (Docket Entry 1 at 5). Thereafter, he pushed Plaintiff to the door and punched Plaintiff in the face. (Docket Entry 1 at 5). Plaintiff began to bleed from his lip and nose. (Docket Entry 1 at 5, 7). Officer Buonsante called for the other officers, who began kicking and punching Plaintiff. (Docket Entry 1 at 7). Plaintiff says that as a result of the confrontation, his left hand pinky and ring fingers were broken. (Docket Entry 1 at 7). The officers next forcefully grabbed Plaintiff's penis and testicles. (Docket Entry 1 at 7). Plaintiff "started yelling I'm not resisting help me." (Docket Entry 1 at 7). The officer then handcuffed Plaintiff, "put [his] face down and force[d] [him] to walk backwards to medical." (Docket Entry 1 at 7). As the result of the alleged conduct by the officers, Plaintiff asserts he is suffering "internal and external complications," his "sex life

3

is tainted," he feels "violated," and he cannot "take showers properly or do any normal activities with [his] hand" (Docket Entry 1 at 7). He was thereafter taken to solitary confinement (Docket Entry 1 at 7).

Plaintiff further claims he was provided improper medical treatment by various, unnamed medical staff as well as ACJF's healthcare provider, CFG Health Systems, LLC.  After the incident with the officers as described above, Plaintiff was escorted to the medical facility where his right hand was x-rayed instead of the left hand that was broken by the officers. (Docket Entry 1 at 7).[3]  He states he "can't feel [his] hand" and has not been given any kind of antibiotics or pain medication. (Docket Entry 1 at 8).  He also cites their failure to take him to a hospital for treatment or stitch his lip. (Docket Entry 1 at 4).

Plaintiff has also named Warden Geraldine Cohen as a defendant, stating he sent her a grievance regarding the actions of the officers and medical staff. (Docket Entry 1 at 9).  He also seeks relief against the Freeholders of Atlantic County as the operators of ACJF and Warden Cohen's "supervisor." (Docket Entry 1 at 6).

---

[3] Plaintiff later states an x-ray was finally taken of his left hand after thirty (30) days had elapsed. (Docket Entry 1 at 9).

Plaintiff seeks relief in the amount of "$500,000,000 or between $2,000,000" (Docket Entry 1 at 11).

## II. DISCUSSION

### A. Standards for a Sua Sponte Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e.  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(b) and 1915A because Plaintiff is a prisoner proceeding *in forma pauperis*.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (following *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive *sua sponte* screening for failure to state a claim,[4] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).  Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

---

[4]  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x. 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

**B. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**III. ANALYSIS**

Plaintiff names the ACJF as a defendant, however ACJF must be dismissed from this action because a jail is not a "person" amenable to suit under § 1983. *See, e.g.*, *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (correctional facility is not a "person" under § 1983). Accordingly, this Court will dismiss with prejudice all claims asserted against ACJF.

**A.   Excessive Force Claim**

Plaintiff first asserts an excessive force claim against several ACJF officers, including Officer A. Buonsante and several unnamed officers, for their conduct on December 1, 2014. As a pre-trial detainee at the time of the incident, Plaintiff is protected by the Due Process Clause of the Fourteenth Amendment. *Fuentes v. Wagner*, 206 F.3d 335, 341 (3d Cir. 2000). Analysis of whether a detainee or un-sentenced prisoner has been deprived of liberty without due process is governed by the standards set forth by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979); *Fuentes*, 206 F.3d at 341-42.

In *Bell*, the Supreme Court stated:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

441 U.S. at 535-36. The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility, and that "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not

have experienced had he been released while awaiting trial." *Id.* at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives, *id.* at 539 n.20, nor are grossly exaggerated responses to genuine security considerations. *Id.* at 539 n.20, 561-62.

Thus, in order for Plaintiff to prove a claim for excessive force, he must demonstrate that the force used amounted to a wanton infliction of punishment, as opposed to restraint rationally related to exercising control. *Fuentes*, 206 F.3d at 342; *see also Bell*, 441 U.S. at 535. Further, while correctional officers may use force against an inmate to preserve order and maintain the safety of other inmates and staff, they may not use gratuitous force against an inmate who has been subdued. *See, e.g., Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009).

Construing all inferences in Plaintiff's favor, as the Court must do at this preliminary screening stage, this Court preliminarily finds that Plaintiff has pled facts sufficient to state a plausible claim for relief necessary to withstand summary dismissal at this time. In particular, the facts, as alleged by Plaintiff in his complaint, are sufficient to question the use of force exercised by Officer Buonsante and the other officers as well as the manner and purpose for which the force was applied. For instance, Plaintiff alleges Officer

Buonsante and the other officers kicked him, broke two of his
fingers, violently grabbed his genitals, continued to use force
against him even after he was handcuffed, and sent him to
solitary confinement in order to "stay quiet". (Docket Entry 1
at 5).  Therefore, the Court will allow Plaintiff's Fourteenth
Amendment excessive force claim to proceed at this time against
Officer Buonsante, Sgt. Gill, Sgt. Montoya, D.t. Geiger J., Ofc.
Grey, and the John Doe officers.

## B.  Denial of Adequate Medical Care

Plaintiff's complaint further alleges he was denied
adequate medical care by the medical staff and CFG in violation
of his Fourteenth Amendment rights.  *See City of Revere v.
Massachusetts General Hospital*, 463 U.S. 239, 243-45 (1983)
(holding that the Due Process Clause of the Fourteenth
Amendment, rather than the Eighth Amendment, controls the issue
of whether prison officials must provide medical care to those
confined in jail awaiting trial); *see also Simmons v. City of
Philadelphia*, 947 F.2d 1042, 1067 (3d Cir. 1991) (noting
Fourteenth Amendment provides at least the same level of medical
care for pretrial detainees as the Eighth Amendment does for
convicted prisoners).  In order to set forth a cognizable claim
for a violation of his right to adequate medical care, an inmate
must allege: (1) a serious medical need; and (2) behavior on the
part of prison officials that constitutes deliberate

indifference to that need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate that his medical needs are serious. A serious medical need is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted). "In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Ibid.* Plaintiff alleges that as the result of the excessive force used by the officers, two fingers on his left hand were broken and in need of medical care. A lay person would easily recognize that medical attention was necessary to treat broken fingers. Furthermore, Plaintiff has asserted he still cannot fully use his left hand. Plaintiff's broken fingers are therefore a serious medical need.

The second element of the *Estelle* test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. *See Natale*, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate

11

health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment as well. *See Atkinson v. Taylor*, 316 F.3d 257, 266 (2003); *see also Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993); *White v. Napoleon*, 897 F.2d 103 (3d Cir. 1990); *Monmouth Cnty. Corr.,* 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment").

Plaintiff alleges the ACJF medical staff and CFG purposefully x-rayed his non-injured right hand instead of his injured left hand following his confrontation with the officers. (Docket Entry 1 at 6-7). He states his left hand was not x-

12

rayed until after 30 days had passed.  (Docket Entry 1 at 9).

He further asserts he has been denied the opportunity to consult

with psychiatric personnel, (Docket Entry 1 at 7), and has not

been given pain medication, (Docket Entry 1 at 8), but he has

provided no facts indicting deliberate indifference on the part

of the medical staff regarding those two assertions.  Therefore,

Plaintiff's denial of medical care claim survives screening only

as to his claim regarding the x-ray of his hand.  The other

claims shall be dismissed without prejudice.

## C.   Denial of Access to the Courts

Plaintiff also appears to allege that Defendants denied him

access to the courts by denying him video-tape footage taken by

Sgt. Montoya, purportedly because Internal Affairs did not

"think [Plaintiff] would know what to do with it" (Docket Entry

1 at 7).

The First and Fourteenth Amendments guarantee inmates a

right of access to the courts. *See Monroe v. Beard*, 536 F.3d

198, 205 (3d Cir. 2008) (per curiam) (citing *Lewis v. Casey*, 518

U.S. 343, 354-55 (1996)). The Supreme Court has repeatedly

recognized that "the fundamental constitutional right of access

to the courts requires prison authorities to assist inmates in

the preparation and filing of meaningful legal papers by

providing prisoners with adequate law libraries or adequate

assistance from persons trained in the law." *Lewis*, 518 U.S. at

346 (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)(internal quotations omitted)). This right is not, however, unlimited. Inmates may only proceed on access-to-court claims with respect to (1) challenges to their sentences (direct or collateral), (2) conditions-of-confinement cases, and (3) pending criminal charges. *See Lewis*, 518 U.S. at 354–55 (recognizing inmates' right to access courts "to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement"). Additionally, an inmate must show that the lack of meaningful access to the courts caused him past or imminent "actual injury". *See Lewis*, 518 U.S. at 350–52; *Oliver v. Fauver*, 118 F.3d 175, 177–78 (3d Cir. 1997). To do this, he must identify an "arguable," "nonfrivolous" underlying cause of action, either anticipated or lost, and show that the prison's deficient program frustrated his efforts to litigate that action. *Lewis*, at 351–53; *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)(citing *Lewis*, 518 U.S. at 353 & n. 3)). To satisfy the "actual injury" requirement,

> [An inmate] might show, for example, that a complaint he
> prepared was dismissed for failure to satisfy some
> technical requirement which, because of deficiencies in
> the prison's legal assistance facilities, he could not
> have known. Or that he had suffered arguably actionable
> harm that he wished to bring before the courts, but was
> so stymied by inadequacies of the law library that he
> was unable to file even a complaint.

*Lewis*, 518 U.S. at 351. Conclusory allegations that an inmate suffered prejudice will not support an access-to-courts claim. *Arce v. Walker*, 58 F. Supp. 2d 39, 44 (W.D.N.Y. 1999)(internal citations omitted).

Here, Plaintiff's access to courts claim involves the instant excessive force and denial of medical care claims. He alleges Sgt. Montoya's body camera took footage of Plaintiff's treatment, or lack thereof, in the medical facility, (Docket Entry 1 at 8), and that unnamed Internal Affairs officers denied him access to the video because they did not "think [he] would know what to do with it." (Docket Entry 1 at 7). Plaintiff has not alleged any harm caused as the result of this alleged withholding, and the fact that Plaintiff has succeeded in filing the instant complaint tends to show there has been none at this time. Plaintiff's denial of access to courts claim will therefore be dismissed without prejudice to Plaintiff's right to seek any video evidence in discovery during the prosecution of his remaining claims.

**D. Warden Cohen**

Plaintiff states Warden Cohen is liable under a *respondeat superior* liability as she is in charge of ACJF and its officers (Docket Entry 1 at 9). Plaintiff alleges he "wrote a grievance to the Warden stating how Atlantic County Justice Facility correctional officers phisically [sic] sexually assaulted me,

15

and how they denied me medical treatment.  While I was enduring
pain and suffering they used cruel and unusual punishment and
kept me in solitary confinement with no medical treatment for 30
days." (Docket Entry 1 at 9).

"Government officials may not be held liable for the
unconstitutional conduct of their subordinates under a theory of
*respondeat superior.*" *Ashcroft v. Iqbal,* 556 U.S. 662, 676
(2009). State actors are liable only for their own
unconstitutional conduct. *Bistrian v. Levi*, 696 F.3d 352, 366
(3d Cir. 2012*).* The Third Circuit has identified two general
ways in which a supervisor-defendant may be liable for
unconstitutional acts undertaken by subordinates: (1) "liability
may attach if they, with deliberate indifference to the
consequences, established and maintained a policy, practice or
custom which directly caused [the] constitutional harm"; or (2)
"a supervisor may be personally liable under § 1983 if he or she
participated in violating the plaintiffs rights, directed others
to violate them, or, as the person in charge, had knowledge of
and acquiesced in the subordinate's unconstitutional conduct."
*Barkes v. First Corr. Med., Inc.,* 766 F.3d 307, 316 (3d Cir.
2014) (internal citations omitted). "[U]nder *Iqbal,* the level of
intent necessary to establish supervisory liability will vary
with the underlying constitutional tort alleged." *Id.* at 319.
In dicta, the Third Circuit suggested deliberate action was

16

required to substantiate an excessive force claim made against a supervisor. *Id.* at 321 (citations omitted); *see also Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010). Plaintiff has alleged no deliberate, direct action by Warden Cohen, therefore any excessive force claim against her must be dismissed for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

As for his claims of denial of medical care, Plaintiff must set forth facts alleging Warden Cohen herself was deliberately indifferent to Plaintiff's medical needs. *Barkes*, 766 F.3d at 319. Deliberate indifference on the part of prison officials "describes a state of mind more blameworthy than negligence[,]" *Farmer v. Brennan*, 511 U.S. 825, 835 (1978), and must be more than "ordinary lack of due care for the prisoner's interests or safety." *Ibid.* "[A] prison official cannot be found liable . . . for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Plaintiff's allegations against Warden Cohen are conclusory and limited to her receipt of a grievance, however this is an insufficient basis of liability. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988); *Stringer*

17

*v. Bureau of Prisons, Federal Agency*, 145 F. App'x 751, 753 (3d
Cir. 2005) (alleged failure to process or respond to inmate's
grievances did not violate his rights to due process and is not
actionable), and therefore his claims do not meet *Iqbal*'s
pleading standard.  The denial of medical adequate care claim
against Warden Cohen must be dismissed as well for failure to
state a claim on which relief may be granted.  28 U.S.C. §
1915(e)(2)(B)(ii).

In this case, however, because it is possible that
Plaintiff may be able to supplement his complaint with facts
sufficient to overcome the deficiencies noted herein, he shall
be given leave to amend his claims against Warden Cohen.  *See
Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir.
2002).

**E.   Freeholders of Atlantic County**

Plaintiff also seeks relief against the Freeholders of
Atlantic County as the operators of ACJF and Warden Cohen's
"supervisor" (Docket Entry 1 at 6).  He states:

> They don't have proper protocol pertaining to "A.R.T."
> procedures for having correctional officers that
> aggressively assault inmates and allow cruel and unusual
> punishment and ignore constitutional violations that are
> going on in this facility when it is brought to their
> attention and when addressed no relief was given.  Plus
> they allow our mail to be intercepted when we argue for
> our constitutional rights are being violated.

(Docket Entry 1 at 6).  It is well-established that municipal liability under § 1983 "may not be proven under the *respondeat superior* doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). As a consequence, a municipality is liable under § 1983 only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion) ("[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").  Plaintiff's "failure to train" and "failure to supervise" claims are a subset of policy liability.

The Third Circuit has defined "policy" and "custom" for the purposes of municipal liability:

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting *Pembaur v. City of Cincinnati*,

> 475 U.S. 469, 481 (1986) (plurality opinion)). A custom
> is an act "that has not been formally approved by an
> appropriate decisionmaker," but that is "so widespread
> as to have the force of law." [*Bd. of County Commis of
> Bryan County v. Brown*, 520 U.S. 397, 404 (1997)].

*Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). Both must be tied to the responsible municipality. Whether a policy or a custom, "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Commis*, 520 U.S. at 404. Thus, for a plaintiff to sufficiently allege municipal liability under § 1983, they must present facts to support a finding that a specific policy or custom caused the alleged harm.  A municipality cannot be found liable under § 1983 simply because it employs wrongdoers. *See Natale*, 318 F.3d at 583.

Plaintiff's Complaint alleges failure to train the officers in "A.R.T" procedures, however he does not assert facts showing a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  Likewise, he fails to plead specific facts regarding how the alleged failure to supervise the officers caused his injuries.  Those two claims against the Freeholders must therefore be dismissed for failure to state a claim on which relief may be granted.  28

20

U.S.C. § 1915(e)(2)(B)(ii).  However, because it is possible that Plaintiff may be able to supplement his complaint with facts sufficient to overcome the deficiencies noted herein, he shall be given leave to amend these claims.  *See Grayson v. Mayview State Hosp.,* 293 F.3d 103, 114 (3d Cir. 2002).

Plaintiff's complaint also alleges the Freeholders "allow our mail to be intercepted when we argue for our constitutional rights are being violated" (Docket Entry 1 at 6).  The Court of Appeals for the Third Circuit has held that a pattern and practice of opening legal mail, including mail sent to and from courts, outside a prisoner's presence impinges upon an inmate's First Amendment right to freedom of speech, and that such practices are valid only if they are "reasonably related to legitimate penological interests."  *Jones v. Brown*, 461 F.3d 353, 358-64 (3d Cir. 2006) (quoting Turner v. Safley, 482 U.S. 78, 89 (1997)), *cert. denied*, 127 S. Ct. 1822 (2007).  The Supreme Court has held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell," *Hudson v. Palmer*, 468 U.S. 517, 526 (1984), and numerous lower courts have held that this applies as well to searches of a prisoner's incoming mail, *see, e.g.*, *Horacek v. Grey*, 2010 WL 914819 at *5 (W.D. Mich. Mar. 12, 2010); *Thomas v. Kramer*, 2009 WL 937272 at *2 (E.D. Calif. Apr. 7, 2009); *Hall v. Chester*, 2008 WL 4657279 at *6 (D. Kan. Oct. 20, 2008; *Rix v.*

21

*Wells*, 2008 WL 4279661 at *2 (M.D. Fla. Sept. 16, 2008).
Plaintiff does not challenge the mail-opening policy itself,
however, rather he claims the policy is retaliatory in nature
and only the mail of those inmates who have sought redress for
their complaint have had their mail opened.

"Retaliation for the exercise of constitutionally protected
rights is itself a violation of rights secured by the
Constitution . . . ." *White v. Napoleon*, 897 F.2d 103, 111-12
(3d Cir. 1990); *see also Mitchell v. Horn*, 318 F.3d 523, 529-31
(3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir.
2001); *Allah v. Seiverling*, 229 F.3d 220, 224-26 (3 Cir. 2000).
To prevail on a retaliation claim, Plaintiff must demonstrate
that (1) he engaged in constitutionally-protected activity; (2)
he suffered, at the hands of a state actor, adverse action
"sufficient to deter a person of ordinary firmness from
exercising his [constitutional] rights;" and (3) the protected
activity was a substantial or motivating factor in the state
actor's decision to take adverse action. *Rauser*, 241 F.3d at 333
(3d Cir. 2001)(quoting *Allah*, 229 F.3d at 225).

Plaintiff's allegation fails on the second factor as he has
not alleged that his legal mail has been intercepted as
retaliation for petitioning for redress or provide specific
facts to make him blanket assertion sufficiently plausible. *See
Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d

22

Cir. 2014)   This claim must therefore be dismissed for failure state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B), however the Court will grant plaintiff leave to amend the complaint.[5]

## III.   CONCLUSION

For the reasons stated above, Plaintiff's excessive force claim against the officers and his denial of medical care claim against CFG and the ACJF medical staff pertaining to his left hand shall be permitted to proceed at this time. His claims against ACJF are dismissed with prejudice. The remainder of Plaintiff's claims are dismissed without prejudice.   An appropriate order follows.


**April 20, 2015**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge

---

[5] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, *Federal Practice and Procedure* 1476 (2d ed. 1990) (footnotes omitted).   An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.   *Id.*   To avoid confusion, the safer course is to file an amended complaint that is complete in itself.   *Id.*   The amended complaint may not adopt or repeat claims that have been dismissed with prejudice by the Court.